BRIDGET JONES, AS ADMINISTRATRIX, ETC., OF WILLIAM JONES, DECEASED, RESPONDENT, v. THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, APPELLANT.

*Negligence — when the question should be submitted to the jury.*

On the 5th of February, 1879, about four inches of snow fell. The seventh was a fair day, the temperature being a little above freezing. On the evening of the seventh, the plaintiff's intestate was directed by the conductor of one of the defendant's trains to get upon it as a brakeman, at a point east of the Broadway crossing in the city of Albany. No one saw him get on the train and he was never seen alive again. At about the place where the intestate was directed to get on the train the ground was trampled, as if by some one who could not catch his feet; from that point there was a mark northward, between the rails, as if something had been dragged there; along this mark were found the cap, gloves and overshoes of the intestate; a brake

stick was found at the crossing and his dead body just north of it; the car wheels were bloody. At the trampled place was found, lying loose and uncovered upon the top of the snow, a broken rung, such as is used in the ladders placed at the sides or ends of freight cars; it was bent or dented; a portion of the break was rusty and seemed to be old, and a portion was bright as though recently broken. This rung was produced at the trial and exhibited to the jury.

*Held,* that a verdict of the jury finding the defendant guilty of, and the intestate free from negligence, would not be disturbed.

APPEAL from a judgment in favor of the plaintiff, entered upon the verdict of a jury, and from an order denying a motion for a new trial, made upon the minutes of the justice before whom the action was tried.

The action was brought to recover damages occasioned by the death of the plaintiff's intestate, which was alleged to have been caused by the defendant's negligence, in furnishing the deceased, a brakeman in its employment, with a defective and unsafe ladder, wherewith to climb to the top of a freight car.

*Samuel Hand,* for the appellant.

*E. Countryman,* for the respondent.

LEARNED, P. J.:

The trampled place near the south end of the wooden shed; the mark from that point northward between the rails, as if something had been dragged; the brass button at the trampled place; the cap, gloves and overshoe along this " drag-mark; " the brake stick at the crossing; the blood on the wheels, and the dead body of Jones north of the Broadway crossing, were sufficient evidence for the jury to find that Jones fell accidentally or intentionally from the car, and was thus killed. He had been directed by the conductor to get upon the train as a brakeman, and was therefore rightfully upon it. The broken rung was found in the middle of the track upon the trampled place. There had been about four inches of snow the fifth of February, ending during the night. The accident occurred the evening of the seventh. The rung was found lying loose on the snow with no snow over it. The weather on the seventh had been fair, and the temperature a little above freezing.

It was a reasonable inference that the rung had fallen not long before it was found. And this inference is consistent with the fact that the rung was wet. The rung was bent, or dented. It had an old rusty break, and a small portion which was bright, as from a recent break. It was produced before the jury. It was competent then for them to infer that it had been partly broken by the former injury, which bent it; and that it had recently broken off.

This rung was one of those which were fastened at the end or side of freight cars to form a ladder by which brakemen should climb to the top. The fact that it was found just at the trampled place, where the ground looked as if it had been trampled by some one who could not catch his feet, and that this was about the place where Jones was to get upon the train, with the other facts, some of which have been mentioned, justify the conclusion that his fall was occasioned by the breaking of the rung. The accident happened in the evening, and it could not be claimed that the deceased might have carelessly failed to examine the condition of the rungs. That was a precaution not to be expected. No one saw the accident, and there is therefore no direct proof that he was not guilty of contributory negligence. (*Reynolds* v. *N. Y. C. and H. R. R. Co.*, 58 N. Y., 248.) Neither did any one see the accident in the case of *Hart* v. *Hudson River Bridge Company* (80 N. Y., 622); and all the facts in that case were as consistent with an intentional jumping, or a careless fall from the bridge, as they were with a fall which care would not prevent. In the language of that case, "When the process is to be had at a trial of ascertaining whether one fact had being, from the existence of another fact, it is for the jury to go through with that process." Plainly, in the present case, the process was to be had of ascertaining whether the fact of the negligence of the deceased *had being* from the existence of the other facts above mentioned. It was then for the jury *to go through with* that process. And if we compare this case with that of *Hart* v. *Hudson River Bridge Company*, we shall see that there was more evidence in the plaintiff's favor in this than there was in that. An examination of the printed case in *Hart* v. *Hudson River Bridge Company* shows that the body of the deceased was found in the river near the abutment; that a splash had been heard in the evening, and a wet place was seen on the abutment, as

if the water had been dashed against it. There was no other evidence that the deceased had even been upon the bridge, except that she had intended to cross the river. Those facts were held sufficient evidence on which the jury should have been allowed to find that the death of the deceased was caused by a fall from the bridge ; and also that such fall was not occasioned by her negligence, although all these facts were consistent with the theory of suicide. (*Reynolds* v. *N. Y. C. and H. R. R. R. Co.*, 58 N. Y., 248.)

Now in the present case there are many more facts which reasonably tend to explain how the accident occurred, and to show that it was due to the half-broken rung.

But the defendant insists that, though the deceased fell while using the ladder, there is an absence of proof of the manner in which he was using it. There cannot, however, be such an absence of proof as there was in the case of Hart. · And further, we have here the fact that the deceased was directed to go upon the train by the person in authority, and that he started for that purpose and was never seen alive afterwards. It is a fair inference that he was attempting to perform that duty with which he was charged, and to perform which he went towards the train.

Another point urged by the defendant is, that there was no evidence of negligence on the part of the defendant in not furnishing suitable machinery. To sustain this position the defendant relies, among other cases, upon *DeGraff* v. *New York Central and Hudson River Railroad Company* (76 N. Y., 128). An important difference between that case and the present arises from a circumstance, to which full effect can hardly be given on appeal. The broken rung was produced to the jury. Of course a description of it cannot be given, so complete as to produce on this court the effect which its appearance had on the jury. But the evidence shows that the rung was bent or dented. How much we do not know. But it is possible that it was so much bent, and in such a direction, that the blow which bent it caused also the breaking of the rung nearly across — the injury which is spoken of as the rusty breaks. Thus the rung might to the jury have shown that it had been injured so greatly, at some previous time, as to be dangerous. Ordinary observation would discover the bend ; and it may be that this bend appeared so great to the jury that it indicated that the

rung had been otherwise injured by the blow, which had been hard enough to bend it. In the De Graff case the court say : "Assuming a defect, there is no evidence what it was, or the nature of it," etc. This we cannot say here. Something there was in the appearance of the rung, which is referred to in the charge, that indicated the defect and its nature.

It is evidently important to the safety of the brakeman that these rungs should be strong and well secured. The brakeman is required to climb perpendicularly by their means. A slip or a fall may throw him between the cars ; and before he can extricate himself, the cars may start and he may be killed. He has a right, therefore, to have these appliances maintained in good condition, so far as can be done by reasonable care. (*Fuller* v. *Jewett*, 80 N. Y., 53.)

And we cannot say that there was nothing in the testimony, taken in connection with the appearance of the broken rung, which would justify the jury in finding that there could not have been reasonable care in this respect on the part of the defendant.

The inferences " are not certain and incontrovertible, and may be differently made by different minds, it is for the jury to make them ; " or as otherwise expressed, " there were facts in this case which were not so weak as to give no support in some fair and sound minds to such legal probabilities," viz., that the plaintiff is entitled to a verdict. (*Hart* v. *Hudson River Bridge Co.*, *ut supra.*)

Some exceptions are taken to specific charges and refusals to charge. But on examining them and the charges delivered by the court, taken as a whole, we think there was no error. The rights of the defendant were fairly presented.

We may add that in this class of cases it is easy to lay down general rules of law. But the point whether the evidence is such as to justify the court in submitting to the jury the question of negligence and contributory negligence can hardly be considered a question of general principles. If juries can form different inferences from the evidence submitted to them, so courts can form different inferences on the point whether the testimony is or is not any evidence of negligence. Each case differs from every other. And it must be admitted that it is not always easy to reconcile them. Perhaps, on the whole, better results would have been

obtained in the end if courts had been more willing to trust to the good sense of juries, even when the defendants were corporations.

The judgment order should be affirmed, with costs.

Present — LEARNED, P. J., and BOCKES, J.; WESTBROOK, J., not sitting.

Judgment and order affirmed, with costs.